**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, as subrogee of Goya Foods, Inc., | **OPINION** |
| Plaintiff, | Civ. No. 08-0444 (WHW) |
| v. | |
| HALLAM ENGINEERING & CONSTRUCTION CORPORATION, MEADOWLANDS FIRE PROTECTION CORP., SALVATORE SCOGLIO, P.E.; PERLEY-HALLADAY ASSOCIATES, INC.; JAMES E. DEBARBIERI ARCHITECTS; JAMES E. DEBARBIERI, R.A.; ABC CORP. 1-10 (fictitious) and JOHN DOES 1-10 (fictitious) | |
| Defendants. | |

**Walls, Senior District Judge**

Defendant/third-party plaintiff Perley-Halladay Associates ("Perley-Halladay") moves for summary judgment as to the cross-claim of defendant Meadowlands Fire Protection Corp. ("Meadowlands"), and also argues that Meadowlands' claim against it is barred by N.J.S.A. 2A:14-1.1 (the "Statute of Repose"). Finally, Perley-Halladay seeks an order awarding costs and fees pursuant to Fed.R.Civ.P. 11. Defendant Meadowlands opposes Perley-Halladay's motion. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the motions are decided without oral argument. Perley-Halladay's motion is denied.

**NOT FOR PUBLICATION**

## FACTUAL AND PROCEDURAL BACKGROUND

This is a subrogation action in which Travelers Insurance ("Travelers") is seeking to recover damages on behalf of Goya Foods, Inc. resulting from a September 2006 fire in Goya's Secaucus, New Jersey warehouse facility. The fire is alleged to have originated in a walk-in refrigerated storage unit (a "bean cooler") which was used for storage of various food products and inventory. (Compl. ¶¶ 31, 32.) The fire caused significant damage to the warehouse.

In 1997, Goya hired defendant Perley-Halladay to be the general contractor responsible for designing and installing the bean cooler. (Compl. ¶ 18.) Goya hired defendant Meadowlands to design and install the sprinkler system for the bean cooler. (Compl. ¶ 26.) Finally, Goya hired defendant Hallam Engineering & Construction Corp. ("Hallam") to inspect and maintain the refrigeration units. (Compl. ¶ 21.)

After the bean cooler was built and Meadowlands finished its work on the sprinkler system, a company named Acme Pallet fitted the bean cooler with a rack storage system. However, the sprinkler system that Meadowlands had installed was designed for a pallet storage system. (Compl. ¶ 28.) At issue is whether Perley-Halladay notified Meadowlands that a rack storage system was going to be installed. Perley-Halladay argues that Meadowlands was notified before construction that the bean cooler was going to be built to accommodate rack storage. (Perley-Halladay Br. at 9.) Meadowlands denies having received such notice, and alleges that that its design of the fire suppression system was based on incomplete information received from Perley-Halladay. (Meadowlands Br. at 5.) During the construction process, Meadowlands received two cooler diagrams from Perley-Halladay: a preliminary drawing dated October 7, 1997, and a revised preliminary drawing dated November 17, 1997. (Perley-Halladay Ex. B, C.) The parties dispute whether these diagrams show an outline of the proposed racks inside of the

**NOT FOR PUBLICATION**

cooler, and dispute whether Meadowlands was otherwise notified of the intended rack storage system.

Travelers filed its complaint against the defendants on January 23, 2008 (Dkt. No. 1.) Travelers' claim against Meadowlands alleges that Meadowlands failed to properly design the sprinkler system for rack storage of food products.  (Compl. ¶¶ 27, 28.)  Meadowlands brought a cross-claim for contribution against Perley-Halladay on March 6, 2008 (Dkt. Nos. 17, 50.) Perley-Halladay filed a motion for summary judgment on August 16, 2010 (Dkt. No. 66).

## STANDARD OF REVIEW

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit.  See Anderson, 477 U.S. at 248.  The moving party must show that the non-moving party has failed to "set forth," by affidavits or otherwise, "specific facts showing that there is a genuine issue for trial."  See Beard v. Banks, 548 U.S. 521, 529 (2006) (citing Fed. R. Civ. P. 56(e)).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" in question. Scott, 550 U.S. at 380 (citing Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).  At the summary judgment stage, the court's function is not to weigh the evidence and

**NOT FOR PUBLICATION**

determine the truth of the matter, but rather to determine whether there is a genuine issue of fact for trial.  See Anderson, 477 U.S. at 249.  In so doing, the court must construe the facts and interferences in the light most favorable to the non-moving party.  Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002).  To survive a motion for summary judgment, a non-movant must present more than a mere "scintilla of evidence" in his favor.  Woloszyn v. Cnty. of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  The opposing party must set forth specific facts showing a genuine issue for trial.  Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).

## DISCUSSION

### I.   Summary Judgment

The dispute between Perley-Halladay and Meadowlands centers upon whether Perley-Halladay informed Meadowlands that a rack storage system, as opposed to a pallet system, was going to be used inside of the bean cooler.  According to Meadowlands, this was a critical piece of information because it impacted the design of an appropriate fire protection system.  (Meadowlands Br. at 3.)  A rack storage system allows for greater circulation of air amongst the stored goods, increasing flammability rates.  (Id. at 3, FN 3.)  Meadowlands argues that it was not advised of this increased risk, and therefore designed the system to accommodate a less risky bulk storage system where goods are stacked on pallets, one on top of another.  (Id.)

Perley-Halladay argues that the cooler diagrams that were sent to Meadowlands clearly show an outline of the proposed racks inside the cooler.  (Perley-Halladay Br. at 5, Ex. B.)  Perley-Halladay also asserts that Ray Caruso of Goya Foods specifically told Meadowlands before construction that rack storage of product was to be installed in the cooler.  (Id., Ex. D.)  Mr. Caruso testified that there were communications between Perley-Halladay, Acme Pallet and

4

**NOT FOR PUBLICATION**

Meadowlands regarding the rack storage system (Id., Ex. E.)  He also testified that during the construction of the cooler, a drawing with the rack layout was taped to the cooler wall for the reference of the various contractors, including Meadowlands (Id., Ex. F.)

Meadowlands counters that, as general contractor for the project, Perley-Halladay was responsible for ensuring that Meadowlands was provided with all necessary drawings for its work on the sprinkler system.  (Meadowlands Br. at 10.)  Perley-Halladay concedes as much, saying that "Perley's responsibility was to generate construction plans for the bean cooler and transmit the plans to the various contractors who were selected by Goya." (Perley-Halladay Br. at 9.)  Meadowlands asserts that it relied upon Perley-Halladay's drawings to perform its work, and Perley-Halladay negligently failed to inform it about the rack storage system or provide it with rack layout drawings.  (Meadowlands Br. at 10.)  Hence, it unknowingly designed a sprinkler system for the bean cooler based upon incomplete data.  (Id.)

Meadowlands argues that Mr. Caruso's testimony is conflicting, highlighting his statement that he was unaware whether Perley-Halladay or Acme Pallet ever advised Meadowlands or sent it anything in writing about the proposed use of a rack storage system (Meadowlands Br. at 7, Ex. A.)  Meadowlands also points to the testimony of Mr. Leonard Guancione, the general manager of Meadowlands.  He testified that Meadowlands did not receive any rack drawings, because if it had, the drawings would have been incorporated into Meadowlands' sprinkler diagrams (Id. at 8, Ex. D.)  Mr. Guancione further testified that he did not recall ever seeing diagrams posted in the bean cooler.  (Id. at 7, Ex. D.)  Meadowlands argues that no documents have been produced evidencing Meadowlands' awareness of the rack storage system or of any drawing showing a rack storage system.  (Meadowlands Br. at 9.)  The only documents that Meadowlands acknowledges receiving were the diagrams dated 10/7/97 (the

**NOT FOR PUBLICATION**

preliminary drawing) and 11/17/97 (the first revised version).  (Id.)  However, Meadowlands asserts that, contrary to Perley-Halladay's characterization, these diagrams do not "clearly show" an outline of the proposed racks inside of the cooler.  On the contrary, neither of these diagrams mention, reference or contain any marking associated with a rack storage system.  (Id.)  In support of this position, Meadowlands submits an expert report concluding that the horizontal lines on Perley-Halladay's preliminary and first-revised drawings do not identify or signify a rack storage system.  (Id. at 7, Ex. C.)

Based on the apparent factual dispute outlined above, Perley-Halladay's motion for summary judgment is denied.  The factual dispute is genuine because a reasonable jury could find that Meadowlands was not aware of the intended rack storage system.  Perley-Halladay argues that the "hard documentary evidence and specific witness testimony clearly show that Meadowlands was in possession of Perley drawings showing rack storage prior to and during construction of the bean cooler." (Perley-Halladay Reply Br. at 2.)  However, the documentary evidence is not conclusive, and the witness testimony is conflicting. In deciding a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence. The factual dispute is also material.  In Travelers' complaint, it alleges negligence on Meadowlands' part for building an inappropriate sprinkler system which contributed to or failed to extinguish the fire.  (Compl. ¶ 27, 28.)  Meadowlands alleges that because it did not have the appropriate information from Perley-Halladay, it built a sprinkler system best suited for a pallet storage system.  It follows that summary judgment is inappropriate.

**NOT FOR PUBLICATION**

### II. Statute of Repose

Perley-Halladay argues that Meadowlands' cross-claim is barred by N.J.S.A. 2A:14-1.1(a) (the "Statute of Repose"). The statute bars actions against a contractor for deficient design or construction of an improvement to real property "more than ten years after the performance or furnishing of such services and construction." Id. The complaint in this action was filed on January 23, 2008. There are two Perley-Halladay invoices dated January 30, 1998, and February 13, 1998, indicating that Perley-Halladay was still doing work on the bean cooler through the week of February 2, 1998. (Meadowlands Br. at 11, Ex. I, J.) The January 30 invoice is for 190 hours of work, and lists the following items: "Finish ceiling; trim work; install doors; hang refrig[eration] units; cut holes for sprinklers; foam penetrations; clean site." (Id., Ex. I.) The February 13 invoice is for 53 hours of work, which included digging holes and setting bollards. (Id., Ex. J.) The certificate of occupancy for the bean room was issued after Perley-Halladay's work had been completed. The parties dispute the nature of the work performed during this time. Meadowlands characterizes it as substantive, whereas Perley-Halladay characterizes it as "residual touch-up work."

   A. *Relevant New Jersey Law*

New Jersey's Statute of Repose provides, in relevant part, that:

> [n]o action . . . to recover damages for any deficiency in the design, … or construction of an improvement to real property, . . . shall be brought against any person performing or furnishing the design, . . . or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction.

N.J.S.A. 2A:14-1.1(a). Where "design or construction services are completed before a certificate of occupancy is issued and the designer or contractor has no further functions to perform in respect of that construction project, then the start date for Statute of Repose purposes is the date

7

**NOT FOR PUBLICATION**

on which the designer or contractor has completed his or her portion of the work." Daidone v. Buterick Bulkheading, 191 N.J. 557, 566 (2007).  However, the relevant date for commencement of the statute of repose is not the date of "final completion," but the date of "substantial completion." Russo Farms, Inc. v. Vineland Bd. of Educ., 144 N.J. 84, 118 (1996).  Substantial completion occurs when "the building is inhabitable, and only touch-up items and disputed items, the 'punch list,' remain.  The punch list is 'a final list of small items requiring completion, or finishing, corrective or remedial work.'" Id. (citation omitted).

    *B. Analysis*

Perley-Halladay argues that the "actual construction of the bean cooler" was completed by early January 1998, and that the subsequent invoices were for "minor residual touch-up work." (Perley-Halladay Br. at 12.)  Meadowlands counters that Perley-Halladay's "own documents establish that it was still performing construction work in the bean room at the end of January 1998 and into February 1998." (Meadowlands Br. at 11.)  The Court finds that Meadowlands' cross-claim against Perley-Halladay is not barred by the Statute of Repose because Perley-Halladay was still performing substantive work within ten years of the filing of the complaint in this action.

Perley-Halladay's invoices indicate that it performed at least 243 hours of work during the weeks of January 26 and February 2, 1998.  This work included the installation of doors, finishing the ceiling, cutting holes for sprinkler heads, hanging refrigeration units and digging into concrete.  These items were part of the substantive construction of the bean cooler, and were not a "punch list" of "small items requiring completion."  Hence, the number of hours billed and the substantive nature of the work performed put these items beyond mere "touch-ups."  Perley-

8

**NOT FOR PUBLICATION**

Halladay's work was not substantially complete before the commencement period for the statute of repose, and Meadowlands' claim is not barred.

### III.    Perley-Halladay's Claim for Fees

As Perley-Halladay's motion for summary judgment is denied, its motion for costs and fees is also denied. Meadowlands has a reasonable and good faith basis for its cross-claim.

### CONCLUSION

Perley-Halladay's motion for summary judgment is denied, and its motion for attorney's fees and costs is denied. Meadowlands' cross-claim is not barred by the Statute of Repose, N.J.S.A 2A:14-1.1.

<div style="text-align:right">

s/ William H. Walls
United States Senior District Judge

</div>